# UNITED STATES DISTRICT COURT
# IN THE WESTERN DISTRICT COURT OF OKLAHOMA

| | |
|---|---|
| **JERRY DRAKE VARNELL,** | } |
| Plaintiff, | } |
| | } |
| v. | } Case no. CIV-18-312-C |
| | } |
| **UNITED STATES OF AMERICA,** | } |
| Defendant. | } |

FILED
APR 06 2018
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____N.V._____,DEPUTY

## WRIT OF HABEAS CORPUS

COMES NOW Melonie Varnell, Legal Guardian Ad Litem for Mr. Varnell, under Federal Civil Rule 17 (B) (C), Exhibit 1, on behalf of Mr. Varnell and hereby Motions the Court pursuant to 28 U.S. Code § 2241 as a Pre-trial Detainee. Mr. Varnell is being held in Chickasha, Oklahoma by the Federal Government at the Grady County Jail awaiting trial on pending charges. Mr. Varnell contends that he has been held in solitary confinement without a due process hearing of which he has a right to under the Fourteenth Amendment and that the conditions he has been subjected to have been cruel and unusual punishment under the Eighth Amendment. Mr. Varnell has also been denied access to medical care for his

1

mental illness which has been an absolute violation of his rights under both the Eight and Fourteenth Amendments.

> A prisoner is entitled to the writ of habeas corpus when, though lawfully in custody, he is deprived of some right to which he is lawfully entitled even in his confinement, the deprivation of which serves to make his imprisonment more burdensome than the law allows or curtails his liberty to a greater extent than the law permits. Logan v. United States, 144 U.S. 263, 12 S. Ct. 617, 36 L. Ed. 429

On August 12, 2018, Mr. Varnell was arrested by the Federal Government and placed into Grady County Jail and was immediately placed in solitary confinement based on a questionnaire that asked him if he had suicidal tendencies. He answered yes to the question due to his severe mental health issues. This prompted the Federal Government Authorities at Grady County Jail to instantly lock him down in solitary confinement in a "trunnel" (a body restraint confinement device that is made to ensure the inmate cannot commit suicide). Mr. Varnell was there for two weeks and was not allowed to have a blanket, paper and pencil, nor shower, have recreational time, or make phone calls. He was unable to contact an attorney until one was appointed to him by the courts.

> "Restrictions on a detainee's telephone privileges that prevented him from contacting his attorney violate the Sixth Amendment right to counsel. . . In certain limited circumstances, unreasonable restrictions on a detainee's access to a telephone may also violate the Fourteenth Amendment."). Murphy v. Waller, #94-1820, 51 F.3d 714 (7th Cir. 1995)

Pretrial detainees are presumed to be innocent and held only to ensure their presence at trial,

> "any deprivation or restriction of . . . rights beyond those which are necessary for confinement alone, must be justified by a compelling necessity." Bell v. Wolfish, 441 U.S. 520, 528 (1979) (citing United States ex rel. Wolfish v. Levi, 439 F. Supp. 114, 124 (S.D.N.Y. 1997).

There was no evidence that Mr. Varnell would try to commit suicide that necessitated him to be placed in a locked room in a trunnel for two weeks without access to a phone, paper and a pencil much less not being allowed to take a shower. Mr. Varnell contends this was cruel and unusual punishment from the Jail based on his charges.

> "[T]o prevail on a Fourteenth Amendment due process claim, one must first demonstrate that he was deprived of life, liberty or property by government action." Phillips v. Norris, 320 F.3d 844, 846 (8th Cir. 2003).

Mr. Varnell was moved into the general population with other Federal detainees and was eventually transferred for a mental competency exam by the BOP. After his return from the BOP in California he was deemed mentally competent to stand trial but the medical professionals did agree that he has schizoaffective disorder which is characterized as a severe mental disease. Around the middle part of January, Mr. Varnell asked to see the facility medical psychiatrist. During the visit he plead with the psychiatrist to raise his medications as he wasn't feeling mentally unstable and felt he needed his Haldol dosage raised. The medical professional

refused to raise his medications but Mr. Varnell was moved to the medical wing of the Jail. On February 2, 2018, Mr. Varnell went to the nurse about a medical issue and he was taken to the hospital. He spent a couple of days in the hospital due to a self-injury he accidentally sustained because of his mental illness. He returned to the facility on February 4, 2018. Once he returned to the facility the Federal Liaison, Eric Forsythe placed him into solitary confinement and took all of his commissary items (property). Eric Forsythe was claiming that it wasn't discipline but rather Administrative detention for Mr. Varnell's safety to be watched even though the cell has a door that isn't openly visible to guards. No hearing was conducted and Mr. Varnell's attorney was not contacted about the incident. On February 5, 2018 Mr. Varnell's mother called the facility to find out why she hadn't heard from Mr. Varnell as he calls her every single day. Eric Forsythe told Melonie Varnell what had happened and that he would be locked down for his own safety indefinitely without regard to Mr. Varnell's medical needs and him wanting to be returned to the medical wing. Melonie Varnell explained to Eric Forsythe that this has happened in the past and surgical intervention was needed. She then requested that Mr. Varnell receive a mental health evaluation.

Melonie Varnell called Mr. Varnell's attorney Marna Franklin and advised her what was happening so she could get further information. She called Eric Forsythe and he had determined that Mr. Varnell would stay in locked down with no

commissary for the remainder of his stay in the facility indefinitely. Marna Franklin begged them to at least give Mr. Varnell his books to read. Mr. Varnell was not allowed to make phone calls once again and wasn't allowed showers or recreational time.

On February 21, 2018, in emails, Exhibit # 2, Marna Franklin continued her efforts to have Jerry removed from solitary confinement and Eric Forsythe claimed he was doing his best with the situation to keep Mr. Varnell safe. Based on the Federal Government's policies;

> 28 CFR 541.11, (6) If it appears at any stage of the disciplinary process that an inmate is mentally ill, staff shall refer the inmate to a mental health professional for determination of whether the inmate is responsible for his conduct or is incompetent. Staff may take no disciplinary action against an inmate whom mental health staff determines to be incompetent or not responsible for his conduct.

It would seem quite apparent that Mr. Varnell should have immediately been examined by a medical professional in psychiatry after the incident and not thrown into solitary confinement and had all of his personal property removed as Eric Forsythe had stated he was doing his best. Considering that Eric Forsythe was claiming this wasn't a disciplinary action but a safety precaution he apparently felt it was legally permissible for him to deny Mr. Varnell the right to due process by a hearing and deny him the right to medical professionals and lock him into solitary

confinement without access to phones, pencil and paper, showers, or recreational time that would only exacerbate his mental deterioration.

> With respect to the SHU, defendants cross the constitutional line when they force certain subgroups of the prison population, including the mentally ill, to endure the conditions in the SHU, despite knowing that the likely consequence for such inmates is serious injury to their mental health, and despite the fact that certain conditions in the SHU have a relationship to legitimate security interests that is tangential at best. defendants have subjected plaintiffs to "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment of the United States Constitution. We observe that while this simple phrase articulates the legal standard, dry words on paper cannot adequately capture the senseless suffering and sometimes wretched misery that defendants' unconstitutional practices leave in their wake. The anguish of descending into serious mental illness, the pain of physical abuse, or the torment of having serious medical needs that simply go unmet is profoundly difficult, if not impossible, to fully fathom, no matter how long or detailed the trial record may be. Madrid V. Gomez, 889 F. Supp. 1146 (N.D. Cal. 1995)

After numerous phone calls spanning approximately two weeks Marna Franklin contacted the US Marshall Omar Ampie and Mr. Varnell was moved to a less restrictive cell that had a phone inside, this cell seemed to be actual administrative segregation. He also was allowed limited commissary items by Omar Ampie but was never told what he could not have in his cell. Family then began sending him commissary items that consisted of food and hygiene products.

Mr. Varnell received regular showers and recreational time during the first week from February 28 through March 5, 2018. Then he was only allowed to shower and

have recreational time twice the next few weeks on March 9, 2018 and not again until March 15, 2018. On March 16, 2018 the jail failed to send him lunch. At around 6 p.m., Melonie Varnell called the facility and alerted them to the fact that they forgot to take Mr. Varnell lunch, they said they would check on it. On March 17, 2018, Mr. Varnell called his mother, Melonie Varnell complaining that he never received his lunch tray but that they did bring him a dinner tray after she had called. Melonie Varnell then instructed him to write a complaint letter to the facility and told Mr. Varnell what to write to complain about the lack of showers, recreational time and the forgotten food tray. He complained about not having access to a medical professional to have his medications adjusted. She also had him dispute the validity of keeping him locked in solitary confinement without due process of law and a hearing. He wrote the letter and turned it into the guards.

On March 19, 2018, Mr. Varnell called his mother Melonie Varnell that Eric Forsythe had called him into his office and that the nurse was present. He claimed that Eric Forsythe was upset with him for writing the complaint and told him that he wasn't allowed to have all commissary items (property). Eric Forsythe claimed that the guards had erred in allowing him all of the commissary items and now he would have them all removed and would no longer allow him to have any commissary items. In fact, an order for food items was returned to Tiger commissary the day after this meeting. Exhibit # 3. Mr. Varnell also said that he was being accused of not

taking his medications as directed but claimed he was only trying to change the timing of one of his medications for night time so he could sleep better and he vehemently claimed he had never refused his medications. He also explained to Eric Forsythe that he had been requesting to see the medical professionals for six weeks to get his medications adjusted. Pretrial detainees have a constitutional right under the due process clause of the Fourteenth Amendment to be free from all "punishment."

> Bell v. Wolfish, 441 U.S. 520, 535 (1979). Conduct that is deliberately indifferent to the serious medical needs of a pretrial detainee violates due process. Salazar v. City of Chicago, 940 F.2d 233, 239 (7th Cir.1991) (specifically applying this standard to a pretrial detainee's claim of inadequate medical care); see Brownell v. Figel, 950 F.2d 1285, 1289 (7th Cir.1991)

After returning to his cell and his concerns being dismissed and ignored by Eric Forsythe the guards were sent to retrieve all of Mr. Varnell's commissary items (property) and an altercation occurred. Mr. Varnell was tazed and then placed back into solitary confinement and has not been allowed to make any phone calls or have paper and pencil. They have threatened to file charges on him for this incident that a guard was supposedly injured but Mr. Varnell contends he was acting in self-defense. They also took his glasses (property) from him and on March 26, 2018 Marna Franklin requested to Eric Forsythe that his glasses should be returned to him so he could see to read. She had visited with him that day concerning legal documents and Mr. Varnell had a very difficult time reading the legal documents

due to him not having his glasses. It is clear that the jail acted in retaliation to Mr. Varnell's written complaint about the conditions that he was being subjected to and not only took all of his personal property but retaliated towards him with vengeance.

> Under 28 CFR 541.10 the rules are that (3) Staff shall control inmate behavior in a completely impartial and consistent manner. (4) Disciplinary action may not be capricious or retaliatory.

Due to this altercation Omar Ampie said that Mr. Varnell would be transferred to Logan County jail for a fresh start but then that was later declined as an alternative to alleviate the situation. It seems very apparent that the staff at Grady County Jail under the Federal Governments Authorities is in fact punishing Mr. Varnell for the crime he is accused of and are retaliating against him for the complaints he filed. Marna Franklin also asked Eric Forsythe to allow Mr. Varnell access to phones as he had some important legal decisions to make and needed access to his attorney. Once again, he hasn't been allowed phone access and no calls have been received violating his Sixth Amendment rights to access to counsel.

Based on 28 CFR 541.17 inmates have rights to a hearing and have the right to present evidence and call witnesses. None of the policies have been followed by Eric Forsythe. If you look at 28 CFR 541.21, it specifically states the rights of inmates if they are in disciplinary segregation:

> (4) *Food.* Staff shall give a segregated inmate nutritionally adequate meals, ordinarily from the menu of the day for the institution. Staff may dispense

disposable utensils when necessary.(5) *Personal hygiene.* Segregated inmates shall have the opportunity to maintain an acceptable level of personal hygiene. Staff shall provide toilet tissue, wash basin, tooth brush, eyeglasses, shaving utensils, etc., as needed. Staff may issue a retrievable kit of toilet articles. Each segregated inmate shall have the opportunity to shower and shave at least three times a week, 6) *Exercise.* Staff shall permit each segregated inmate no less than five hours exercise each week. Exercise should be provided in five one-hour periods, on five different days, but if circumstances require, one-half hour periods are acceptable if the five-hour minimum and different days schedule is maintained. These provisions must be carried out unless compelling security or safety reasons dictate otherwise. Institution staff shall document these reasons. Exercise periods, not to exceed one week, may be withheld from an inmate.(7) *Personal property.* Institution staff shall ordinarily impound personal property.(8) *Reading material.* Staff shall provide a reasonable amount of non-legal reading material, 9) *Supervision.* In addition to the direct supervision afforded by the unit officer, a member of the medical department and one or more responsible officers designated by the Warden (ordinarily a Lieutenant) shall see each segregated inmate daily, including weekends and holidays. Members of the program staff, including unit staff, shall arrange to visit inmates in special housing within a reasonable time after receiving the inmate's request.(10) *Correspondence and visits.* As to correspondence privileges, see part 540, subpart B. Staff shall make reasonable effort to notify approved social visitors of any necessary restriction on ordinary visiting procedures so that they may be spared disappointment and unnecessary inconvenience. If ample time for correspondence exists, staff may place the burden of this notification to visitors on the inmate. As to general visiting and telephone privileges, see part 540, subpart D and subpart I.

The policy makes it very clear that inmates under disciplinary segregation have rights to shower, recreational time, and phone calls. Even if you look at the rules governing Administration segregation inmates have to right to:

> 28 CFR 541.21 (3) When an inmate is placed in administrative detention for protection, but not at that inmate's request, the Warden or designee is to review the inmate's status within two work days of this placement to determine if continued protective custody is necessary. A formal hearing is to be held within seven days of the inmate's placement (see § 541.23, Protection Cases).(d) *Conditions of administrative detention.* The basic level of conditions as described in § 541.21(c) for disciplinary segregation also apply to administrative detention. If consistent with available resources and the security needs of the unit, the Warden shall give an inmate housed in administrative detention the same general privileges given to inmates in the general population. This includes, but is not limited to, providing an inmate with the opportunity for participation in an education program, library services, social services, counseling, religious guidance and recreation. Unless there are compelling reasons to the contrary, institutions shall provide commissary privileges and reasonable amounts of personal property. An inmate in administrative detention shall be permitted to have a radio, provided that the radio is equipped with ear plugs. Exercise periods, at a minimum, will meet the level established for disciplinary segregation and will exceed this level where resources are available. The Warden shall give an inmate in administrative detention visiting, telephone, and correspondence privileges in accordance with part 540 of this chapter. The Warden may restrict for reasons of security, fire safety, or housekeeping the amount of personal property that an inmate may retain while in administrative detention.

It is very clear that the Federal Government Authorities at Grady County Jail have been punishing Mr. Varnell since the first day of his arrest. Mr. Varnell has tried numerous times to see a medical professional and to have his medications adjusted. His mother has requested them to be adjusted as well as his attorney Marna Franklin. His pending case is set for trial in May 2018 and it is our contention that we need him to be competent to stand trial to get this matter resolved. These actions are placing an undue burden on Mr. Varnell's mental health and he is being treated with

cruel disregard to his mental health violating his Eighth and Fourteenth Amendment rights to not be treated with cruel and unusual punishment and be afforded due process of law. The policies of the Code of Federal Regulations are not being followed or are they abiding by Mr. Varnell's constitutional rights afforded to him but the Constitution. The Federal Government Authorities are not above the law and have been making purposeful grievance errors in the handling of this pretrial detainee.

There is no argument that this can be filed under a Section 1983 claim but those civil suits take an extraordinary amount of time especially with the provision that a complaint is to be filed with the Bureau of Prisons to exhaust all administrative remedies before filing that suit in Court. Under *Moore*, 515 F.2d at 443, if extraordinary circumstances are presented then the Court is allowed to intervene under a Writ of Habeas Corpus. Since Mr. Varnell does not have access to his counsel, to phones to paper and pencil it is ill conceived that he is able to even file any type of complaint to get that process started. Segregation in solitary confinement has most generally been used for inmates that have committed an initial disturbance and it has been used to protect the safety of other inmates or guards. Mr. Varnell committed no such act in the beginning. His only crime is having a severe mental illness as characterized by the DSM. According to the, American Psychiatric

Association. *Diagnostic and Statistical Manual of Mental Disorders* 5th ed. Arlington, VA: APA; 2013.

> DSM-5 diagnostic criteria for schizoaffective disorder
> A. An uninterrupted period of illness during which there is a major mood episode (major depressive or manic) concurrent with Criterion A of schizophrenia.
>    **Note**: The major depressive episode must include Criterion A1: Depressed mood.
> B. Delusions or hallucinations for 2 or more weeks in the absence of a major mood episode (depressive or manic) during the lifetime duration of the illness.
> C. Symptoms that meet criteria for a major mood episode are present for the majority of the total duration of the active and residual portions of the illness.
> D. The disturbance is not attributable to the effects of a substance (e.g., a drug of abuse, a medication) or another medical condition.
>    **Bipolar type:** This subtype applies if a manic episode is part of the presentation. Major depressive episodes may also occur.
>    **Depressive type:** This subtype applies if only major depressive episodes are part of the presentation.

The Federal Governments own medical professional has agreed that this is Mr. Varnell's diagnosis but are refusing to allow him to receive any medical treatment outside of the medications he was previously prescribed before incarceration for said diagnosis which is cruel and unusual punishment and is an act of malice.

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in

> intentionally denying or delaying access to medical [429 U.S. 97, 105] care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. 97, 106

Mr. Varnell is being punished out of retaliation for first being charged with a crime, secondly, being severely mentally ill and third, for filing a complaint. There is no doubt that these actions fall under malicious intent by the authorities in charge and that it's a grievous act of misconduct. Eric Forsythe can not expect a reasonable person to believe that moving Mr. Varnell into solitary confinement was in his best interest and an act out of regard to his safety when he failed to have any medical professionals to attend to his mental needs. Removing all of Mr. Varnell's property and glasses was definitely an act of malice intended to punish Mr. Varnell for having been accused of a crime and having a severe mental disease. Had Mr. Varnell's medications been adjusted when he first went to the medical professionals none of this would have happened. He was denied an increase in his Haldol and this allowed his mental health to deteriorate and then when he began exhibiting symptoms and problems arose he was punished for those symptoms of mental disease by the authorities that are claiming to be protecting him for himself with no access to mental health services locked in solitary confinement with no access to anyone that can potentially help him.

**Wherefore**, Mr. Varnell prays for relief from this Court. Mr. Varnell prays that this Court orders Grady County Jail under the supervision of The Federal Government to place Mr. Varnell back into the medical wing of the jail. That this Court orders that he sees a medical professional for his mental health disease weekly to ensure that his mental capacity remains competent. That this Court orders the supervisors for the Federal Government at Grady County Jail to follow the law of the land and to stop violating Mr. Varnell's civil rights that are afforded to pretrial detainees by the Constitution. Mr. Varnell also prays that this Court orders that if the Federal Authorities at Grady County Jail cannot abide by the rules of the Court, the CFR and the Constitution that they move him to a different holding facility that is able to handle his mental health disease. Mr. Varnell also prays that this Court appoint an attorney to ensure that his rights and mental health needs are being met.

### Declaration Under Penalty of Perjury

I, declare under penalty that I am the Petitioner. I have read the petition or had it read to me and the information in this petition is true and correct, I understand a false statement of a material fact may serve as the basis of prosecution for perjury.

Dated: April 5th 2018

Respectfully submitted,

Melonie Varnell-Authorized Rep

18631 E 1220 Rd Sayre, OK 73662

405-808-9452